IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONIQUE CAVE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 10-2577 |
| v. | : | |
| | : | |
| JOHN E. POTTER, | : | |
| | : | |
| Defendant. | : | |

**OPINION**

**Slomsky, J.**                                                                                                                               **September 8, 2011**

**I.      INTRODUCTION**

Before the Court is Defendant's Motion to Dismiss the Complaint (Doc. No. 13). Plaintiff Monique Cave brought this action under the Rehabilitation Act, 29 U.S.C. § 701 *et seq* ("the Act"), alleging that the United States Postal Service ("USPS" or "Postal Service") violated the Act when it denied her a particular job she sought after being evaluated by a Postal Service physician. The evaluation found that she was not medically qualified for the job assignment she desired. Based on this evaluation, which Plaintiff claims was erroneous, she asserts that the Postal Service perceived her as disabled and discriminated against her while having this misconception. For reasons that follow, the Court will grant the Motion to Dismiss.

**II.     FACTS AND PROCEDURAL HISTORY**

    A.      <u>Plaintiff's Employment With USPS</u>

Plaintiff is an African American female who is employed by the Postal Service. (Doc. No. 12 ¶ 1.) She has worked for the USPS since May 22, 1993. (<u>Id.</u>) From 1993 until August

14, 2006, Plaintiff worked as a Mail Processing Clerk at the 30th Street postal facility located in Philadelphia, Pennsylvania. (Doc. No. 12 ¶ 2.) On June 9, 2006, Plaintiff received a letter from USPS management informing her that the 30th Street facility was transitioning work to a new facility located at Lindbergh Boulevard in Philadelphia. (Doc. No. 12 ¶ 3; Doc. No. 12, Ex. A.) The letter informed Plaintiff that her current assignment was being abolished, and encouraged her to bid on posted vacancies. (Doc. No. 12 ¶¶ 3–4.) Between June 12, 2006 and June 19, 2006, she bid on several vacancies on the USPS electronic bid-site, including Mail Handler and Maintenance Worker. (Id. ¶ 5.)

On June 16, 2006, Plaintiff underwent a medical examination by Dr. Wayne Hentschel, D.O., a postal medical officer, for the purposes of assessing whether she was capable of performing the job of Mail Handler. (Id. ¶ 6.) Dr. Hentschel concluded that Plaintiff was a "high risk candidate not medically qualified to perform the essential functions . . . of mail handler." (Id. ¶ 7; see also Doc. No. 12, Ex. D at 6.) Ilka Bates, USPS Manager, then informed Plaintiff that her bid for the position of Mail Handler was denied based on Dr. Hentschel's evaluation. (Doc. No. 12 ¶ 10.)

On August 11, 2006, Plaintiff had a physical examination performed by her own physician, Raymond Coleman, M.D. (Id. ¶ 12.) Dr. Coleman found that she had no significant physical restrictions and was capable of working up to eight hours with normal breaks, and capable of lifting "up to 50 pounds." (Id. at Ex. E.)

According to Plaintiff, from August 16, 2006 to October 14, 2006, she was directed to work at the Lindenbergh facility as a Mail Handler, although she was not officially assigned to this position. Plaintiff avers that she was promoted to Mail Handler, was given a Mail Handler

identification badge, and performed the job duties and tasks of a Mail Handler. (Doc. No. 12 ¶¶ 16–17.)

On September 6, 2006, while performing work of a Mail Handler, Defendant informed Plaintiff by letter that she was to report to the Philadelphia Bulk Mail Center ("BMC") to commence training as a Maintenance Worker. (Id. at Ex. F.) This transfer was never completed because Plaintiff was unsuccessful in passing the required entrance exam (Test 916) for the Maintenance Worker position. (Id. ¶¶ 18–19.) On October 12, 2006, Plaintiff was directed to report to the retail Post Office facility located in King of Prussia, Pennsylvania. (Id. ¶ 20.) According to Plaintiff, she performed Mail Handler duties there because she "was not yet trained for the retail position." (Id. ¶ 20.) On December 19, 2006, Defendant informed Plaintiff by letter that she was to report to the Carrier Annex in King of Prussia for a new assignment. (Doc. No. 12 ¶ 23.)

On or about January 7, 2007, Plaintiff received a letter from Postmaster Jefferey Schoch advising her to request a reassignment to the Custodial Craft and in the event Plaintiff failed to do so, or if Plaintiff failed the entrance exam, "action would be taken to remove her from the Postal Service." (Id. ¶ 25; Doc. No. 12, Ex. I.) On or about January 20, 2007, Plaintiff was notified that she had passed the entrance test, and she began working in the Custodial Craft at the BMC. (Doc. No. 12 ¶ 28.) Plaintiff claims that in every position she actually worked, she performed and completed her shift without physical limitation. (Id. ¶¶ 22, 29.) Plaintiff worked at the BMC until March 23, 2009, when she went on leave without pay.[1] (Id. ¶ 29.)

---

[1] On March 23, 2009, Plaintiff began her leave without pay status as a result of stress. The stress claim was filed with the Postal Service's Equal Employment Opportunity Commission on December 27, 2008. (Doc. No. 12 ¶ 34.)

B.      Plaintiff Pursues EEOC Action And Instant Case

Back on December 5, 2006, Plaintiff first contacted the Equal Employment Opportunity Commission ("EEOC") to discuss, among other things, USPS management's rejection of her bid for the position of Mail Handler. (Doc. No. 15 at 10.) After her initial contact, Plaintiff filed charges against the Postal Service with the EEOC. On July 8, 2009, the EEOC Administrative Judge granted summary judgment in favor of the Postal Service, finding that the Plaintiff did not establish a prima facie case of race, sex, and age discrimination. (Doc. No. 12, Ex. A at 2.) The Judge found that she failed to identify a similarly situated employee outside of her protected group that was treated more favorably. (Id.) Regarding the disability discrimination claim, the Judge found that Plaintiff failed to establish that the Postal Service mistakenly perceived her to be substantially limited in a major life activity. (Id.)

Plaintiff was authorized by the EEOC to file a civil action against the USPS and filed her Complaint in this Court on May 27, 2010 (Doc. No. 1). On July 14, 2010, Plaintiff filed an Amended Complaint[2] (Doc. No. 4). Plaintiff initially alleged three claims: racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; gender discrimination in violation of Title VII; and discrimination by reason of a perceived disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. Following a hearing, Plaintiff was granted leave to amend the Second Amended Complaint filed pursuant to Federal Rule of Civil Procedure 15(a)(2). On December 10, 2010, Plaintiff filed a Third Amended

---

[2]      Docket number 4 is the First Amended Complaint. Plaintiff labeled it a "Second Amended Complaint."

Complaint, dropping race and gender-based claims[3] (Doc. No. 12). On December 21, 2010, Defendant filed a Motion to Dismiss (Doc. No. 13), and on January 10, 2011, Plaintiff filed a Response in Opposition (Doc. No. 14).

## III.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been examined by the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947–50). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded

---

[3]    Docket number 12 is the Third Amended Complaint. Plaintiff labeled it a "Fourth Amended Complaint."

components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210–11 (citing Phillips v. County of Allegheny 515 F.3d 224, 234–35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.  DISCUSSION

### A.  Plaintiff Has Failed to Exhaust Administrative Remedies

Defendant initially contends that this Court should dismiss the Complaint because Plaintiff did not exhaust her administrative remedies by initiating contact with an EEOC counselor within the requisite statutory period of 45 days from the date of the alleged discriminatory conduct. The Court agrees.

"A federal employee seeking relief under the Rehabilitation Act must exhaust administrative remedies prior to filing suit." Campbell v. United States, 375 F. App'x 254, 258 (3d Cir. 2010); see also Freed v. Consol. Rail Corp., 201 F.3d 188, 191 (3d Cir. 2000). The applicable regulations require a complainant to initiate contact with an EEOC counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). Compliance with the 45 day time period in which to contact the EEOC counselor is mandatory. Wadhwa v. Sec'y

Dep't of Veterans Affairs, 396 F. App'x 881, 885 (3d Cir. 2010); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997). Failure to exhaust an administrative remedy renders a complaint subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007).

Here, Plaintiff first contacted the EEOC counselor on December 5, 2006. Defendant avers that this contact was untimely because the alleged discrimination occurred on one of several dates: 1) June 16, 2006, the date of Dr. Henschel's report; or 2) sometime between June 16 and August 11, 2006, when Plaintiff received a physical examination by her own doctor, Dr. Coleman; or 3) the date Ilka Bates informed her that her bid for Mail Handler was denied based on Dr. Hentschel's report, which most likely occurred prior to August 11, 2006—the date that Plaintiff obtained a physical by Dr. Coleman.[4]

Plaintiff contends the relevant date is October 22, 2006. She argues that by this date, she first realized, after performing the duties of Mail Handler but still not being offered the position officially, that Defendant might have a discriminatory motive in denying her bid for Mail Handler. (Doc. No. 15 at 9.) This date would make her contact with the EEOC on December 5, 2006 timely. Plaintiff concedes, however, that this date has no significant event attached to it. (Id.)

At the November 9, 2010 hearing on the first Motion to Dismiss filed by Defendant,[5] the

---

[4] It was after her June 16, 2006 examination by Dr. Hentschel that Plaintiff was informed by Bates that the bid for Mail Handler was denied. On August 11, 2006, Plaintiff was seen by Dr. Coleman.

[5] On March 14, 2011, this Motion to Dismiss was denied without prejudice as moot after the Third Amended Complaint was filed.

Court permitted Plaintiff to amend the already amended complaint, and instructed Plaintiff to provide factual allegations regarding the date of the discriminatory conduct and any other date necessary to determine the timeliness of Plaintiff's contact with the EEOC. In the Third Amended Complaint, Plaintiff has not complied with this instruction by specifying the dates necessary to show compliance with the exhaustion requirement. The failure to provide this information is symptomatic of the fact that the contact with the EEOC counselor did not occur within the required 45 day period. Under the applicable regulations, an aggrieved employee must initiate contact with an EEO counselor within 45 days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997) (stating that exhaustion requires a timely consultation with an agency counselor, as well as the timely filing of a formal EEOC complaint). The Third Circuit has held that the failure to comply with the 45 day requirement will result in the dismissal of a complaint. Wadhwa v. Sec'y Dep't of Veterans Affairs, 396 F. App'x 881, 885 (3d Cir. 2010).

      The crux of Plaintiff's claim in the Third Amended Complaint is that she was discriminated against based on the perceived disability erroneously reported by Dr. Hentschel. Plaintiff claims that she was expressly informed by Ilka Bates that "all of her bids for the position of Mail Handler were denied based on the results of Dr. Hentschel's evaluation." (Doc. No. 12 ¶ 10.) She then went to her doctor, Dr. Coleman, for an independent evaluation on August 11, 2006. It was not until months later, on October 22, 2006, that Plaintiff avers that she realized that Defendant may be denying her the Mail Handler position because of Dr. Hentschel's report, despite the fact that Ilka Bates expressly told her the same thing months earlier.

      Plaintiff has not alleged any facts or discriminatory conduct to support her claim that the

triggering date is October 22, 2006. The regulations require her to initiate contact within 45 days of the alleged discriminatory conduct. Her subjective belief that by October 22, 2006 she was discriminated against does not satisfy the requirement that discriminatory conduct be alleged. If a belief by a plaintiff of being discriminated against is the standard that triggers the 45 day period, this requirement could be easily disregarded in every case by simply making such an allegation. It would render the 45 day period meaningless. As such, Plaintiff has not exhausted her administrative remedies by complying with the 45 day time limit.

To overcome the evident failure to comply with the requisite time limit, Plaintiff contends that the 45 day time limit should be extended based on the exception set out in 29 C.F.R. § 1614.105(a)(2):

> The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

Plaintiff submits that given this exception, the 45 day time limit is subject to tolling, "which functions to stop the statute of limitations from running where the claim's accrual date has already passed." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

Plaintiff, however, may not obtain the benefit of this regulation. She has not alleged in the Complaint facts that plausibly demonstrate that she was not notified or not aware of the time limit, that she had no knowledge of the discriminatory matter or personnel action, or that despite

her due diligence, she was prevented by circumstances from contacting the EEOC counselor.

In addition, Plaintiff relies on the doctrine of equitable tolling to stay the 45-day limitations period. The Third Circuit has stated that "there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver, 38 F.3d at 1387.

Plaintiff argues that the 45 day period should be equitably tolled because Defendant actively misled Plaintiff regarding the reason for denying her the Mail Handler position. As previously mentioned, however, Plaintiff was expressly informed by Ilka Bates that she was being denied the position of Mail Handler because of the report issued by Dr. Hentschel. No facts are alleged to support her claim that she was misled. Moreover, she was not prevented from asserting her rights, or initially pursued this case in the wrong forum. Accordingly, the Court will not apply equitable tolling here.

For the above reasons, the Court will grant the Motion to Dismiss because Plaintiff failed to exhaust her administrative remedies.

      B.      Plaintiff Has Failed to Allege Disability Discrimination

There is another reason to grant the Motion to Dismiss. In support of the Motion, Defendant argues that Plaintiff has failed to identify her purported disability within the meaning

of the Rehabilitation Act[6] beyond conclusory allegations.[7] The Court agrees. To establish a prima facie case under the Rehabilitation Act, Plaintiff must show that: (1) she has a disability, or is perceived to be disabled by her employer within the meaning of the Act; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she was prevented from performing that job because of the disability. See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

The first element requires that Plaintiff must be disabled within the meaning of the Rehabilitation Act. Under the Act, a "disability" is defined in accordance with Section 3 of the Americans with Disabilities Act ("ADA") of 1990. See 29 U.S.C. § 705. A "disability" is: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2006).

Plaintiff has failed to establish that she has a substantially limiting impairment, or was regarded as having one. The term "substantially limits" means that a person is: (1) "[u]nable to perform a major life activity that the average person in the general population can perform;" or (2) "[s]ignificantly restricted as to the condition, manner or duration under which an individual

---

[6] The Rehabilitation Act, 29 U.S.C. § 701 et seq., is the exclusive remedy for federal employees alleging claims of disability discrimination. See Spence v. Straw, 54 F.3d 196, 202–03 (3d Cir. 1995) ("[I]t would be anomalous to permit a litigant to avoid [the] remedial scheme [of the Rehabilitation Act] by simply asserting an independent constitutional claim premised upon the same facts.").

[7] See Michels v. Sunoco Home Comfort Serv., No. 04-1906, 2004 WL 2897945, at *2 (E.D. Pa. Dec. 13, 2004) (dismissing ADA claim where plaintiff did not identify alleged disability); McCann v. Catholic Health Initiative, No. 98-1919, 1998 WL 575259, at *2 (E.D. Pa. Sept. 8, 1998) (plaintiff's ADA claim must be dismissed due to plaintiff's failure to describe his disability or qualifications).

can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).  For example, in order to establish that Plaintiff is substantially limited in the major life activity of working, she must show that she is unable to work in "either a class of jobs or a broad range of jobs in various classes . . . . The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); see also Toyota Motor Mfg., Ky. Inc. v. Williams, 534 U.S. 184, 200 (2002); Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).[8]

"Major life activities" are defined as "includ[ing], but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).  In Sutton, the United States Supreme Court stated:

> To be substantially limited in [a] major life activity . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

---

[8] The purported discrimination in the instant case is alleged to have occurred in 2006.  In 2008, Congress amended the ADA, overturning the Supreme Court's decision in Sutton (holding that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures to overcome the substantial impairments) and Toyota Motor.  Section 8 of the 2008 ADA Amendments Act sets the effective date as January 1, 2009.  The amendments, therefore, are not applicable here.  Courts have held thus far that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.  See Supinski v. United Parcel Service, No. 06-0795, 2009 U.S. Dist. LEXIS 3143, at *17–18 (M.D. Pa. Jan. 16, 2009), rev'd on other grounds, 2011 U.S. App. LEXIS 2955 (3d Cir. Feb. 15, 2011) (collecting cases).

527 U.S. at 492.

> i. Plaintiff Was Not Perceived As Being Disabled Within The Meaning Of The Act

Plaintiff argues that Defendant discriminated against her by reason of a perceived disability.[9] Under 42 U.S.C. § 12102(1)(C), Plaintiff may still be considered "disabled" within the meaning of the Act if she is "regarded as having such an impairment" by her employer. The regulations provide that an individual is regarded as being disabled if she:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or (3) has none of the impairments . . . but is treated by a covered entity as having a substantially

---

[9] While Plaintiff only alleges discrimination based on a perceived disability, the Court also has considered whether Plaintiff has an actual disability that caused discrimination. In this regard, Plaintiff has not pled sufficient facts that, taken as true, would establish her as disabled within the meaning of the Act. In Michels v. Sunoco Home Comfort Service, No. 04-1906, 2004 U.S. Dist. LEXIS 25152, at *6 (E.D. Pa. Dec. 10, 2004), plaintiff alleged disability discrimination in violation of the ADA, based on an allegation of a "physical disability" and "mental disability" without any elaboration. The court dismissed the claim on the ground that plaintiff failed to satisfy a pleading requirement by not stating the nature of the claimed disability, which was "insufficient to state a cause of action under the ADA." Id. Here, Plaintiff does not provide any details about her purported disability beyond the conclusory statement in her Third Amended Complaint that she "is an African American female with a disability." (Doc. No. 12 ¶ 4.)

Further, Plaintiff's own allegations contradict the existence of an actual disability under the Act. She argues that she was capable of performing the jobs she sought at the USPS. Only impairments causing substantial limitation in a person's ability to perform major life activities constitute a disability within the meaning of the Rehabilitation Act. See Albertson's, Inc. v. Kirkengburg, 527 U.S. 555, 565 (1999). In order to be substantially limited, a person "must be precluded from more than one type of job, a specialized job, or a particular job choice." Sutton, 527 U.S. at 492. Here, the Postal Service offered Plaintiff various positions and Plaintiff concedes that she continued to "perform her work duties . . . without physical limitation or restriction." (Doc. No. 12 ¶¶ 22, 30, 31, 38.) Consequently, Plaintiff has not sufficiently pled facts that would establish her as disabled under the Act.

limiting impairment.

29 C.F.R. § 1630.2(1); <u>Endres v. Techneglas, Inc.</u>, 139 F. Supp. 2d 624, 636 (M.D. Pa. 2001).

Here, Plaintiff asserts that the Postal Service regards her as substantially limited in a major life activity. Notably, Plaintiff does not allege what that major life activity consists of. Even assuming that Plaintiff is contending that the major life activity is her ability to work, Plaintiff's Third Amended Complaint contradicts such a claim. Based on the information in the Third Amended Complaint, the Postal Service did not treat her as being foreclosed from a "broad range of jobs" as required under <u>Sutton</u> and <u>Toyota Motor</u>. As previously noted in <u>Sutton</u>, the United States Supreme Court stated:

> To be substantially limited in [a] major life activity . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

527 U.S. at 492. Likewise, assuming Plaintiff is contending that the major life activity she was perceived as being substantially limited in was that of performing manual tasks, Plaintiff's Third Amended Complaint contradicts this allegation. In <u>Toyota Motor</u>, the Supreme Court of the United States noted, "when addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." 534 U.S. at 200–01. Here, Defendant found her medically unfit for one particular job based on the report of Dr. Hentschel. Thereafter, Defendant offered Plaintiff other positions such as Mail Processing Clerk, Maintenance Worker, Retail Clerk, and Custodial

Craft.[10] Moreover, Plaintiff does not contend here that she is unable to perform tasks central to most people's daily lives or that she was perceived as such and therefore incapable of performing a broad range of jobs. In sum, Plaintiff has not alleged facts that plausibly show that the Postal Service failed to consider Plaintiff for other positions due to a perceived disability.

In her brief, Plaintiff argues that based on Dr. Hentschel's report, Defendant "could potentially prevent [Plaintiff] from any position with the Defendant that is a highly "physical" position or requires "heavy lifting" and "heavy carrying." (Doc. No. 15 at 13.) She fails however, to identify these positions. Moreover, Plaintiff ignores her own allegations in the Third Amended Complaint that USPS offered her various jobs requiring lifting. (Doc. No. 12 ¶ 29.)

In the absence of factual allegations that show Plaintiff was disabled under the Act, or establish any plausible case of being perceived as substantially limited in performing a major life activity, and in light of the existence of ample allegations demonstrating conclusively that Postal Service offered her other appropriate positions, Plaintiff has not alleged a violation of the Rehabilitation Act. Consequently, the Third Amended Complaint will be dismissed.

## IV. CONCLUSION

Because Plaintiff has failed to exhaust her administrative remedies and failed to plausibly show discrimination based on a perceived disability under the Rehabilitation Act, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order follows.

---

[10] Plaintiff did not pass the entrance examination (Test 916) for the position of Maintenance Worker. She also failed the physical examination for the position of Mail Handler. Plaintiff was also offered a position as Retail Clerk, but requested an accommodation because taking public transportation during early morning hours from her home in Philadelphia to the retail office located in King of Prussia was a hardship. (Doc. No. 12 ¶¶ 10, 18–23, 26.)